**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 26, 2022.**

_____
**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| GLORIA CRISTINA MACHADO, § | | CASE NO. 21-51329-MMP |
| § | | |
| DEBTOR. § | | CHAPTER 7 |

**OPINION**

I. **INTRODUCTION.**

Before this Court is a motion for relief from the automatic stay as to real property that serves as the current residence and asserted homestead of Debtor Gloria Cristina Machado (the "Debtor"). Movants Jose Carlos Garza ("Mr. Garza") and Narsadelia Garza (collectively with Mr. Garza, the "Movants") seek relief pursuant to 11 U.S.C. § 362(d)(1), (d)(2), and (d)(4). For the reasons set forth below, the Court is of the opinion that the requested relief should be granted.

1

## II. JURISDICTION AND VENUE.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Because this matter is a core proceeding, the Court has the authority to enter a final judgment in this matter pursuant to 28 U.S.C. § 157(b)(1). *See **Stern v. Marshall***, 564 U.S. 462, 474 (2011) ("Bankruptcy judges may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'").

## III. BACKGROUND.

The Debtor filed a voluntary petition under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code")[1] on October 29, 2021. The Debtor's petition lists the real property at issue (the "Property")[2] as her current residence, claims an interest in the Property in her Schedule A/B, and claims a homestead exemption in the Property pursuant to § 522(d)(1) in her Schedule C. The Debtor's schedules list the value of the Property at $575,000.

This is not the first bankruptcy case involving this Property, nor is this the first time the Movants have sought relief from the automatic stay with regard to this Property. The Movants are the original owners of the Property and had a house constructed on it in 1997. The Movants resided on the Property until November of 2014, at which point the Property was sold to The Gloria Cristina Estrada Machado GST Trust (the "Trust"), for which the Debtor serves as trustee.[3] On

---

[1] Hereinafter all statutory references and citations will be to the Bankruptcy Code.
[2] The Property is located at 2346 Fountain Way, San Antonio, Bexar County, Texas 78248. The Property's legal description is Lot 65, Block 1, New City Block 18908, THE FOUNTAINS AT DEERFIELD SUBDIVISION UNIT THREE, "A PLANNED UNIT DEVELOPMENT", situated in the City of San Antonio, according to the map or plat thereof, recorded in Volume 9526, Page 61, Deed and Plat Records, Bexar County, Texas.
[3] The nature of the Debtor's actual interest in the Property is unclear. The documents from the sale transaction in 2014 identify the Debtor as the trustee of the Trust, but neither party offered evidence of the terms of the Trust itself. The Court therefore does not know if the Debtor currently is: (i) a trustee of the Trust, (ii) a sole trustee of the Trust, (iii) a beneficiary of the Trust, or (iv) a sole beneficiary of the Trust. Although no party disputed that the Debtor serves as trustee for the Trust and has a beneficial interest in the Trust, the Court lacks any evidence of the existence

2

November 20, 2014, as part of the transaction to purchase the Property, the Trust executed a wrap-around promissory note (the "Note") in favor of the Movants. The Note had an initial principal amount of $439,000 with annual interest of 7% payable to the Movants in monthly installments of $2,920.68 beginning January 1, 2015. The Note had a maturity date sixty months—five years—from the date of execution[4] and provided for an interest rate of 18% on matured, unpaid amounts. Mr. Garza testified that the transaction was structured as a five-year note because the Movants are not a bank and could not afford to finance the note beyond five years and because the Debtor and her husband, Michael Machado ("Mr. Machado," and, collectively with the Debtor, the "Machados") anticipated that they would be able to refinance the Note on a fifteen-plus-year mortgage before the Note's maturity date.

The Debtor signed the Note on behalf of the Trust and on her own behalf individually. Mr. Machado also signed the Note as a guarantor. Mr. Machado is a lawyer and has been since 1991. The Trust and the Debtor individually also executed a wrap-around deed of trust (the "Deed of Trust") in favor of the Movants. At the same time, the Movants executed a warranty deed with a vendor's lien in favor of the Trust and the Debtor individually.

On April 19, 2018, the Movants, through counsel, sent the Debtor a letter informing her that she and the Trust had defaulted on certain obligations under the Note. The Movants posted the Property for a nonjudicial foreclosure sale in June of 2018. To forestall the foreclosure, Mr. Machado and his law firm filed suit on behalf of the Trust and the Debtor against the Movants in state court and obtained an *ex parte* temporary restraining order stopping the foreclosure. The state-court suit was nonsuited in February of 2020, at which point the Movants again posted the

---

or terms of the Trust through which the Debtor purports to make her homestead claim in the Property owned by the Trust.

[4] The Note was executed on November 20, 2014, so by its terms, the Note's maturity date was November 20, 2019.

Property for nonjudicial foreclosure with a sale scheduled for April of 2020. The Movants asserted, without dispute, that the foreclosure was halted once again when the Bexar County Judge issued an order prohibiting foreclosure sales due to the onset of the COVID-19 pandemic.

On July 6, 2020, Mr. Machado individually filed a chapter 13 bankruptcy case.[5] Mr. Machado listed the Property as his residence in his petition, claimed an interest in the Property in his Schedule A/B, and claimed a homestead exemption in the Property in his Schedule C.[6]

On December 14, 2020, the Movants filed a motion for relief from the automatic stay as to the Property in Mr. Machado's bankruptcy case. The bankruptcy court, the Honorable Ronald B. King presiding, granted the motion in part in a hearing held on January 7, 2021, and issued an order modifying the stay on February 4, 2021. In that order, Judge King, among other relief: (i) required Mr. Machado to list the Property for sale; (ii) required that the sale of the Property close escrow on or before September 1, 2021; and (iii) required Mr. Machado to make monthly adequate-protection payments to the Movants in the amount of $3,000 beginning on February 10, 2021, and continuing until the sale of the Property closed escrow. Judge King's order also provided that, in the event that Mr. Machado failed to timely make an adequate-protection payment or to sell the Property by September 21, 2021, the automatic stay would lift, and the Movants would be allowed to foreclose on the Property.

The Property was not sold by September 21, 2021, and the Debtor did not submit any evidence that the Machados ever listed the Property or that it was marketed by a real-estate broker in the eight-and-a-half months between Judge King's order regarding the stay and the September 21, 2021 deadline for Mr. Machado to close on a sale of the Property. The Debtor's responsive

---

[5] Case No. 20-51233-mmp in the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division.
[6] Unlike the Debtor, Mr. Machado, who lacks any ownership interest in the Property, claimed a state homestead exemption rather than a federal exemption in homestead property.

4

pleading suggested that the Machados talked with "real estate investors," but the Debtor submitted no evidence identifying any potential buyer. As a result, the automatic stay in Mr. Machado's case lifted. In October of 2021, the Movants once more took steps to post the Property for nonjudicial foreclosure with a sale scheduled to take place on November 2, 2021. The Debtor filed her bankruptcy petition on October 29, 2021, however, and the imposition of the automatic stay prevented foreclosure for a third time. The Movants filed this motion for relief from the automatic stay on December 3, 2021.

The Court held a hearing on the Movants' motion for relief from stay on January 10, 2022. The Court heard testimony from both Mr. Garza and Mr. Machado. Of note, the Debtor herself did not appear for the hearing either in person or remotely via telephone or video conference.

### IV. DISCUSSION.

The filing of a bankruptcy petition operates as an automatic stay of any act to "enforce any lien against property of the estate." § 362(a)(4). A secured creditor who wishes to foreclose upon collateral that is property of the estate may seek relief from the automatic stay by filing a motion pursuant to § 362(d), which provides that, after notice and a hearing, "the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay" under certain conditions. § 362(d). The Movants' motion for relief from the stay seeks relief pursuant to § 362(d)(1), (d)(2), and (d)(4). The Court will address each of these grounds for relief in turn.

### A. Section 362(d)(1).

Section 362(d)(1) provides that a court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of [the movant]." § 362(d)(1). The Bankruptcy Code does not define "cause," and so courts are to determine whether cause exists to grant relief from stay in a case-by-case approach. ***In re JCP Props., Ltd.***, 540 B.R. 596, 613

(Bankr. S.D. Tex. 2015) (citing *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998)). This lack of definition affords bankruptcy courts flexibility in determining what constitutes cause. ***Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)***, 440 F.3d 238, 253 (5th Cir. 2006) (quoting ***Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)***, 779 F.2d 1068, 1072 (5th Cir. 1986)).

To establish a *prima facie* case of cause due to a lack of adequate protection, the creditor seeking relief must show that the value of the collateralized property is declining or is threatened to decline as a result of the automatic stay. *In re JCP Props.*, 540 B.R. at 613 (citing ***In re Panther Mountain Land Dev., LLC***, 438 B.R. 169, 189 (Bankr. E.D. Ark. 2010)). Once the creditor establishes a *prima facie* case, the burden shifts to the debtor to prove that the collateral is not declining in value or that the creditor is otherwise adequately protected. ***In re Self***, 239 B.R. 877, 881 (Bankr. E.D. Tex. 1999) (citing *In re Kowalsky*, 235 B.R. 590, 595 (Bankr. E.D. Tex. 1999)).

The Debtor values the Property at $575,000 in her Schedule A/B. Mr. Machado corroborated this value by testifying that, in September of 2021, he and the Debtor received an offer from an unidentified buyer to purchase the Property for that amount. Mr. Machado also testified that this figure is lower than what the Property's full value could be, and that it would require an investment of $100,000 or more to prepare the Property for sale at its full potential price. Further, testimony from both Mr. Machado and Mr. Garza established that the Property has a recent history of needing repair. The Property apparently suffered hail damage during a storm in September of 2019. The roof on the Property required repairs for some time and was only repaired in March or April of 2021 after Judge King entered his order in Mr. Machado's chapter 13 case. Both witnesses testified as to damage suffered by the Property in the winter storm in February of 2021. Testimony established that, with one exception, the Trust, the Debtor, and Mr. Machado

have not been paying property taxes, homeowner-association dues ("HOA Dues"), or insurance with respect to the Property. Under the Deed of Trust, the Trust and the Debtor are responsible for payment of these regular expenses. First-in-priority statutory liens secure the property taxes on the Property and deed-of-trust liens secure the HOA Dues. Testimony established that the Movants have been paying these expenses and the insurance premiums on the Property since 2017. As of October of 2020, these costs totaled approximately $100,000. Uncontroverted testimony indicated that the Movants also paid these Property expenses in 2021. These ongoing obligations also incumber the Property.

Although Mr. Machado did make several adequate-protection payments pursuant to Judge King's order, those payments ceased in October of 2021, when the Debtor filed this chapter 7 case. It is not clear why the adequate-protection payments ceased. Nothing in Judge King's order relieved Mr. Machado of his obligation to continue making adequate-protection payments to the Movants, although it is true that the failure to sell the Property by September 21, 2021, triggered a lifting of the stay under Judge King's order and allowed the Movants to seek foreclosure. Mr. Machado's default under Judge King's order by failing to sell the Property did not absolve Mr. Machado of the continuing obligation to make adequate-protection payments, nor did it absolve the Trust or the Debtor of their ongoing obligations under the Deed of Trust to pay property taxes, HOA Dues, and property insurance.

All of these factors combined convince the Court that the Property is declining in value or is at risk of significant further decline in value beyond the decline that it has already suffered and that the Movants are not and have not been protected from that substantial, ongoing decline in value. As such, the Court finds cause to grant relief from the automatic stay for lack of adequate protection of the Movants' interest in the Property.

A lack of adequate protection is not the only ground for cause for relief from the stay. Courts have also found a lack of good faith to constitute cause for lifting the stay to permit foreclosure. *In re Little Creek Dev. Co.*, 779 F.2d at 1072. A determination of whether a debtor's filing for bankruptcy relief is in good faith "depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Id.* The Fifth Circuit has set out a number of conditions, "[s]everal, but not all [of which] usually exist" in instances of bad-faith filings. *Id.*

> The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract . . . . Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property.

*Id.* at 1073.

These factors do not match up exactly with the Debtor's case, but they do not miss the mark by much. The Property is not the only asset listed in the Debtor's schedules, but the value of the Property accounts for over 94% of the total value of the Debtor's property listed in Schedule A/B. The Movants' security interest encumbers the Property. Although the Movants are not the only secured creditors in this bankruptcy, the value of their claim similarly makes up nearly 94% of the total amount of secured claims. The Debtor lists unsecured debt totaling $73,599.35, all but $3,000 of which is held by the Internal Revenue Service. The chapter 7 trustee filed on the docket a Report of No Distribution indicating that "there is no property available for distribution from the estate over and above that exempted by law." *See* Chapter 7 Trustee's Report of No Distribution,

8

Dec. 6, 2021. The Property has been posted for foreclosure on multiple occasions. Though the Debtor asserts in her pleadings that the most recent attempt at foreclosure in November of 2021 was improper under state law, rather than assert those arguments in state court, she has instead resorted to the bankruptcy process to forestall foreclosure of the Property.

In addition to these factors, the Court also notes that the Property has been subject to a previous motion for relief from the automatic stay in Mr. Machado's bankruptcy and that the stay in that case lifted after no sale of the Property occurred by the September 21, 2021 deadline set out in Judge King's order on that motion. Judge King already determined that the Movants were entitled to foreclose on the Property, and the Debtor filed this chapter 7 case mere days prior to the scheduled foreclosure sale. The Machados' and the Trust's actions and inactions make it appear as if there were a coordinated effort between the Machados and the Trust to forestall the Movants' attempts to foreclose on the Property. The serial actions of the Machados and the Trust in response to each foreclosure posting by the Movants—i.e., the initial *ex parte* temporary restraining order, Mr. Machado's bankruptcy filing, and the Debtor's bankruptcy filing—the failure of the Machados and the Trust to list or to properly market the Property, and the unilateral termination of adequate-protection payments by Mr. Machado, who is the only wage earner per the schedules, suggest bad faith by the Machados and the Trust. Lastly, the Debtor failed to appear or testify at the hearing on the motion for relief from stay in her own case. The Court finds that all of these factors evidence a lack of good faith on the part of the Debtor in filing for bankruptcy relief.

The Court therefore finds cause, both for lack of adequate protection and for lack of good faith, to grant relief from the automatic stay in favor of the Movants pursuant to § 362(d)(1).

### B. Section 362(d)(2).

In the alternative, the Movants seek relief from the automatic stay pursuant to § 362(d)(2). Section 362(d)(2) provides that a court shall grant relief from the stay with respect to an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." § 362(d)(2). When a creditor seeks relief under § 362(d), the creditor has the burden of establishing a lack of equity in the property, and the debtor has the burden of establishing that the property is necessary for an effective reorganization. ***Canal Place Ltd. P'ship v. Aetna Life Ins. Co. (In re Canal Place Ltd. P'ship)***, 921 F.2d 569, 576 (5th Cir. 1991) (citing ***United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.***, 484 U.S. 365 (1988)).

This is a case under chapter 7. Because chapter 7 strictly involves liquidation, there can be no effective reorganization as a matter of law. ***In re JCP Props.***, 540 B.R. at 618 (citing ***In re Young***, No. 06–80534, 2007 WL 128280, at *6 (Bankr. S.D. Tex. Jan. 10, 2007)). Even if a reorganization were possible as a matter of law, the Debtor has submitted no evidence of an effective reorganization nor that the Property is necessary for an effective reorganization. The Debtor therefore failed to carry her burden, and the Movants satisfy prong (B) under § 362(d)(2). The Movants need only establish that the Debtor does not have equity in the Property.

"Equity" as used in § 362(d) "portends the difference between the value of the subject property and the encumbrances against it." ***Sutton v. Bank One, Tex., Nat'l Ass'n (In re Sutton)***, 904 F.2d 327, 329 (5th Cir. 1990) (citing ***Stewart v. Gurley***, 745 F.2d 1194 (9th Cir. 1984); ***In re Cardell***, 88 B.R. 627 (Bankr. D.N.J. 1988)). The Movants' security interest is the only contractual

10

encumbrance on the Property.[7] To establish a lack of equity, the Movants must show that the debt encumbering the Property exceeds the value of the Property.

There was no real dispute between the parties as to the current value of the Property. The Debtor values the Property at $575,000 in Schedule A/B, and Mr. Machado testified that he and the Debtor received an offer to purchase the Property for that amount in September of 2021. The Movants did not contest that valuation. The Court thus finds that the value of the Property is $575,000.

The Debtor's Schedule D lists Mr. Garza as a secured creditor as to the Property with a claim in the amount of $650,334, though the schedule indicates that the Debtor disputes this amount. Mr. Garza testified that the debt owed to the Movants now totals $870,000. Mr. Garza testified that, on top of the outstanding principal on the debt, the Debtor owes the Movants for property taxes, insurance premiums, and HOA Dues that the Debtor and the Trust were obligated to pay but that the Movants paid on their behalf. The Movants also assert that the Debtor and the Trust owe the Movants for attorney's fees incurred in pursuing their rights under the Note. Mr. Machado did not dispute that the Debtor and the Trust were obligated to the Movants for these expenses, but he did dispute the total amount of obligations asserted.

The Movants' primary evidence of the amount of debt owed consisted of Mr. Garza's testimony, a spreadsheet containing an estimate of the sums due to the Movants, and a tax statement from the Bexar County Appraisal District dated December 29, 2021. The spreadsheet, which Mr. Garza testified was current only as of October of 2020, lists the Movants' estimate of the principal balance ($422,090.16) plus amounts owed to the Movants for: (i) property-taxes and

---

[7] Statutory property-tax liens and lien covenants securing HOA Dues also appear to encumber the Property. The Property was previously encumbered by a primary mortgage in the name of the Movants held by San Antonio Federal Credit Union, but the Movants refinanced the underlying note with a mortgage secured by the Movants' current home. The Movants' security interest is thus the only current contractual encumbrance on the Property.

related credit-card convenience fees for tax years 2016 through 2020 ($82,685.52); (ii) insurance premiums for the years 2017 through 2020 ($11,291.51); (iii) HOA Dues plus late fees for the years 2017 through 2020 ($5,706.88); and (iv) attorney's fees ($14,910). In total, before interest, these amounts add up to $536,684.07 in estimated principal, expenses, and fees owed by the Debtor to the Movants as of October of 2020. The Debtor introduced no evidence to dispute these amounts, but Mr. Machado testified, and the evidence showed, that the Machados made a payment of $19,201.07 to the Movants on March 5, 2018, pursuant to a signed agreement to postpone foreclosure on the Property. The signed agreement indicates that the payment was, at least in part, reimbursement for 2017 property taxes. Mr. Machado testified that the Movants failed to credit them with this payment in the spreadsheet. Taking this into account, the Court finds that, as of October of 2020, the outstanding principal on the debt, plus the fees and expenses listed above, totaled $517,483.

Note interest accrued at 7% per annum before maturity and at 18% per annum at maturity or acceleration. The Note by its terms provided for a maturity date of November 20, 2019. The Movants asserted that the Note's maturity was accelerated on May 11, 2018, after a default on the Note by the Debtor and the Trust for nonpayment of taxes, insurance, and HOA Dues. Mr. Machado disputed that the acceleration was proper. Regardless of whether the Note matured in May of 2018 or November of 2019, the Court is of the opinion that, as of October of 2020, the Note had matured, and the interest rate of 18% applied. Applying this interest rate for the fourteen months beginning November of 2020 through December of 2021, the debt as of the date of the hearing would have been at least $637,412.65.[8]

---

[8] The Court says "at least" because this amount ignores any interest that may have accrued at the 18% maturity rate prior to October of 2020 as well as insurance premiums and HOA Dues for 2021. The Movants' evidence suggests that, had the 18% interest rate begun accruing as of the Note's maturity date of November 20, 2019, the total debt including interest *as of October of 2020* would have been $592,152.54. That evidence also suggests that, had the 18%

Mr. Garza acknowledged that, pursuant to Judge King's order in Mr. Machado's case, Mr. Machado made eight adequate-protection payments of $3,000 each—a total of $24,000—between the entry of the order and the filing of the Debtor's petition in October of 2021. The Court will credit the Debtor for these payments. Mr. Garza testified, and the evidence showed, that 2021 property taxes are currently due and owing in the amount of $23,531.39 and that, since October of 2020, he has incurred additional attorney's fees in the amount of $9,000 split between bankruptcy counsel and state-court counsel. These amounts should be added to the debt total. Taking these figures into account, the Court finds that the amount of the debt encumbering the Property as of the date of the hearing was no less than $645,944.[9]

The Court need not determine the exact amount owed to the Movants in order to determine that the secured debt owed by the Trust to the Movants far exceeds the $575,000 value of the Property. Because the minimum figure of the debt ($645,944) exceeds the undisputed value of the Property ($575,000), the Court finds that the Movants have satisfied their burden of proving that the Debtor lacks equity in the Property. The Court thus concludes that the Movants should be granted relief from the automatic stay pursuant to § 362(d)(2).

### C. Section 362(d)(4).

As a final request for relief, the Movants ask the Court to grant *in rem* relief with respect to the Property pursuant to § 362(d)(4). Section 362(d)(4) provides that the Court shall grant relief from the stay:

---

interest rate begun accruing as of the alleged acceleration on May 11, 2018, the total debt including interest *as of October of 2020* would have been $650,334.50. The Court notes that neither of these numbers took into account the Machados' $19,201.07 payment on March 5, 2018, and thus the Movants' interest calculations are not entirely accurate.
[9] A table of the Court's calculations is included as Appendix 1.

13

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>> (B) multiple bankruptcy filings affecting such real property.

§ 362(d)(4). If an order under § 362(d)(4) is recorded in accordance with applicable state law, it "shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court . . . ." *Id.*

To receive relief under § 362(d)(4), a movant must show that three conditions are satisfied: (1) that the debtor's current bankruptcy filing is part of a scheme; (2) that the debtor's scheme was to delay, hinder, or defraud creditors; and (3) that the scheme involves either (A) a transfer of real property without the secured creditor's consent or court approval or (B) multiple bankruptcy filings affecting the real property at issue. **In re JCP Props.**, 540 B.R. at 619. Both the second and third conditions are disjunctive. *Id.* Thus, to satisfy the second condition, the movant need only show that the scheme was for one of the three proscribed purposes. *Id.* Likewise, to satisfy the third condition, the movant need only show that the scheme involved *either* a transfer of real property *or* multiple bankruptcy filings affecting the real property at issue. *Id.*

The Court finds that the Debtor's chapter 7 petition was filed to delay or hinder the Movants' foreclosure on the Property. Mr. Machado testified that the Debtor filed the bankruptcy petition to prevent the foreclosure sale. Even had Mr. Machado not testified as such, the record is clear. The Debtor's petition was filed on October 29, 2021, just a few days before the scheduled foreclosure sale on November 2, 2021.

The Court finds that there have been multiple bankruptcy filings affecting the Property, i.e., Mr. Machado's chapter 13 case and the Debtor's current chapter 7 case. The Debtor's counsel argued that "multiple" must mean more than two and that the Debtor has only filed one bankruptcy case. These arguments are not persuasive. When a statute's language is plain, a court should enforce it according to its terms. **Emmons & Jackson, P.C. v. S&J Diving, Inc. (In re SeaQuest Diving, LP)**, 579 F.3d 411, 418 (5th Cir. 2009) (citing **Lamie v. U.S. Tr.**, 540 U.S. 526, 534 (2004)). Words in statutes are typically construed according to their ordinary, contemporary, common meanings. **Cascabel Cattle Co. v. United States**, 955 F.3d 445, 451 (5th Cir. 2020) (citing **Kennedy v. Tex. Utils.**, 179 F.3d 258, 261 (5th Cir. 1999)). Section 362(d)(4)(B) refers to "multiple bankruptcy filings *affecting such real property*." § 362(d)(4)(B) (emphasis added). The statute does not impose a condition that the filings must be by the same debtor. Rather, by the plain meaning of its terms, the statute is only concerned with whether the real property at issue has been involved in multiple filings. Further, according to Merriam-Webster, the word "multiple" means "consisting of, including, or involving more than one." *Multiple*, Merriam-Webster, https://www.merriam-webster.com/dictionary/multiple (last visited Jan. 15, 2022). Two is more than one. Thus, there have been multiple bankruptcy filings affecting the Property.

The question of whether to grant relief under § 362(d)(4) thus hinges on whether the Debtor's filing was part of a scheme. Though the Bankruptcy Code does not define the word "scheme," other bankruptcy courts in the Fifth Circuit have interpreted it using its plan meaning as "a plan or program of action." *See, e.g.*, **In re JCP Props.**, 540 B.R. at 619 (citing **In re Young**, 2007 WL 128280, at *9). *In re JCP Properties* involved the second bankruptcy filing by the same debtor. *Id.* at 620. In the debtor's first bankruptcy case, the bankruptcy court lifted the stay as to the real property at issue and authorized the secured creditor to foreclose. *Id.* On the eve of

15

foreclosure, the debtor filed a second bankruptcy case to trigger the automatic stay, which delayed and hindered the secured creditor's ability to pursue its rights to foreclose. *Id.* The debtor's testimony revealed that it intended to use a new automatic stay to get a new breathing spell and hinder or delay the foreclosure. *Id.* The bankruptcy court found that the debtor's conduct "shows the very essence of a scheme to hinder and delay." *Id.*

Likewise, the Court finds that the filing of the Debtor's chapter 7 petition was part of a scheme to delay or hinder the Movants' attempts to exercise their right of foreclosure. In Mr. Machado's case, Judge King required Mr. Machado to sell the Property prior to September 21, 2021, or the stay would be lifted, and the Movants would be authorized to foreclose. The Property was not sold by the deadline, and the Movants took steps to foreclose on the Property as authorized. Then, only a few days prior to the scheduled foreclosure sale, the Debtor filed her petition, which Mr. Machado testified was intended to prevent the foreclosure. Moreover, prior to any bankruptcy filings by the Machados, Mr. Machado, as a lawyer for the Trust—which appears to be controlled by the Debtor—filed a lawsuit against the Movants and obtained an *ex parte* temporary restraining order against the Movants to prevent the Movants from foreclosing on the Property. It thus appears to the Court that the Debtor's bankruptcy filing was part of "a plan or program of action" to delay or hinder the foreclosure.

The Court will thus grant the Movants *in rem* relief from the automatic stay as to the Property pursuant to § 362(d)(4).

V. **CONCLUSION.**

The Court finds cause, including a lack of adequate protection and a lack of good faith, to grant relief from the automatic stay pursuant to § 362(d)(1). Further, because the Court finds that the Debtor lacks equity in the Property, and because there cannot be an effective reorganization in

a chapter 7 case as a matter of law, the Court also grants relief from the automatic stay pursuant to § 362(d)(2). Finally, because the Court finds that the Debtor's filing of the chapter 7 petition was part of a scheme to delay or hinder the Movants' foreclosure of the Property, and because the scheme involved multiple bankruptcy filings affecting the Property, the Court also grants *in rem* relief as to the Property pursuant to § 362(d)(4). A separate order consistent with this ruling shall be entered.

###

## APPENDIX 1

**Debt as of October of 2020**

| | | |
|---|---:|---:|
| **Estimated Principal Balance** | | $422,090.16 |
| **Property Taxes** | | |
|   2016 Property Taxes | $15,426.07 | |
|   2016 Credit-Card Convenience Fee | $323.95 | |
|   2017 Property Taxes | $17,638.17 | |
|   2017 Credit-Card Convenience Fee | $370.40 | |
|   2018 Property Taxes | $15,298.99 | |
|   2018 Credit-Card Convenience Fee | $321.21 | |
|   2019 Property Taxes | $16,501.12 | |
|   2019 Credit-Card Convenience Fee | $346.52 | |
|   2020 Property Taxes | $16,459.09 | |
|   **Property Taxes Subtotal** | | **$82,685.52** |
| **Insurance Premiums** | | |
|   2017 Insurance Premiums | $2,324.42 | |
|   2018 Insurance Premiums | $2,536.09 | |
|   2019 Insurance Premiums | $3,674.00 | |
|   2020 Insurance Premiums | $2,757.00 | |
|   **Insurance Premiums Subtotal** | | **$11,291.51** |
| **HOA Dues** | | |
|   2017 and 2018 HOA Dues plus Late Fees | $1,978.74 | |
|   2019 (1st. Q) HOA Dues plus Late Fees | $989.37 | |
|   2019 (2nd–4th Qs) and 2020 (1st Q) HOA Dues plus Late Fees | $1,759.36 | |
|   2020 (2nd & 3rd Qs) HOA Dues plus Late Fees | $979.41 | |
|   **HOA Dues Subtotal** | | **$5,706.88** |
| **Attorney's Fees** | | $14,910.00 |
| **Less Payment Made on March 5, 2018** | | ($19,201.07) |
| **Amount of Debt as of October of 2020** | | **$517,483.00** |

**Minimum Debt as of the Date of the Hearing (January 10, 2022)**

| | | |
|---|---:|---:|
| **Amount of Debt as of October of 2020** | $517,483.00 | |
| **Interest** | $119,929.65 | |
|   (14 months at a rate of 18% per annum compounding monthly) | | |
| **2021 Property Taxes** | $23,531.39 | |
| **Additional Attorney's Fees** | $9,000.00 | |
| **Less Adequate-Protection Payments** | ($24,000.00) | |
|   (8 payments of $3,000 each) | | |
| **Min. Amount of Debt as of January 10, 2022** | **$645,944.04** | |